**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**IRVIN JAYOINE BAKER,**

      **Petitioner,**

                                   **Civil Action No. 3:15cv31**
**v.**                                   **Criminal Action No. 3:14cr41-1**
                                        **(GROH)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

## REPORT AND RECOMMENDATION

## I. Introduction

On March 23, 2015, the *pro se* petitioner, an inmate incarcerated at FCI Cumberland in Cumberland, Maryland, filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. ECF No. 84. Pursuant to a Notice of Deficient Pleading from the Clerk of Court, on April 1, 2015, the petitioner filed his claims on a court-approved form petition. On April 10, 2015, petitioner filed a motion to have copies sent to his family members [ECF No. 9]; by Order entered April 14, 2015, the motion was denied. ECF No. 92. On May 12, 2015, the Government was directed to respond. ECF No. 98. The Government filed a Motion to Dismiss, or in the Alternative, for Summary Judgment and Response along with a memorandum in support on June 9, 2015. ECF No. 103 and 104. Petitioner never filed a reply. However, on June 1, 2016, petitioner filed a letter motion to amend/correct his pending §2255 motion to include a claim under <u>Johnson v. United States</u>[1] and an additional claim regarding counsel's ineffectiveness and his sentence. ECF No. 135. On June

---

[1] <u>Johnson v. United States</u>, 135 S.Ct. 2551 (2015).

30, 2016, petitioner filed a § 2244 motion in the Fourth Circuit Court of Appeals.[2]  As of the date of this Report and Recommendation, that motion is still pending.

## II. <u>Facts</u>

### A. <u>Conviction and Sentence</u>

On January 13, 2012, petitioner signed a plea agreement by which he agreed to plead guilty to Count Four of a five-count indictment with a forfeiture provision, distribution of heroin, in violation of Title 21, United States Code, §841(b)(1)(C).  In the agreement, petitioner waived his right to appeal but not the right to collaterally attack his sentence.  Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 11. Mr. Baker is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal his sentence (or the manner in which that sentence was determined) including any enhancements under Section 4B1.1 of the Guidelines, on the grounds set forth in Title 18, United States Code, Section 3742 or an [sic] any ground whatever, if the Court determines that defendant's base offense level under the advisory Guidelines is a Level 24 or less. This waiver of appellate rights is not intended to represent the defendant's estimation of what an appropriate or reasonable sentence would or should be. Nor does this waiver of rights prevent the defendant from arguing for a sentence below the aforementioned adjusted advisory Guideline offense level at sentencing.  The United States waives its right to appeal any sentence within the applicable advisory Guideline range.  Both parties have the right during any appeal to argue in support of the sentence.

ECF No. 43 at 4.

On September 15, 2014, petitioner appeared in open court for his plea hearing. ECF No. 102.  Petitioner testified that he was 35 years old, had attended school until the 11th grade, and had obtained his GED.  <u>Id.</u> at 4 - 5.  He testified that he could read, write and understand the English language. <u>Id.</u> at 5.  He denied any recent medical or psychiatric care for any serious physical or mental illness including treatment for addiction to drugs or alcohol.  <u>Id.</u>  He denied

---

[22] <u>In re Irvin Baker</u> (4th Cir. ECF No. 2)(16-9889).

any current use of any form of controlled substance, medication or alcohol that might affect his ability to understand the proceedings. Id. The Court inquired of defense counsel whether he had any reason to question the petitioner's competency, and counsel denied it. Id.

The Government summarized each paragraph of the plea agreement for the Court. Id. at 9 – 15. The Court then asked counsel if the Assistant U.S. Attorney ("AUSA") had fairly summarized the entire agreement and counsel agreed that the AUSA had. Id. at 15. The Court asked petitioner whether he understood and agreed with the terms contained in the agreement and the petitioner said yes. Id. Petitioner denied having any questions about the plea agreement. Id. at 15 – 16. He testified that he understood and agreed with all the terms and conditions of the plea agreement, and had had an opportunity to read, fully discuss with counsel, and understand it before signing it. Id. at 16. The Court specifically asked petitioner if he understood that under the terms of the waiver of his appellate rights, he only retained those rights if the sentence he ultimately received was based on a determination by the Court that his base offense level under the advisory Guidelines was a Level 24 or less, and petitioner said that he did. Id. at 28. During the plea hearing, the Government presented the testimony of Sergeant Tom Kearns, of the West Virginia State Police, then-currently assigned to the Eastern Panhandle Drug and Violent Crime Task force, to establish a factual basis for the plea. Id. at 20 - 22. The petitioner did not contest the factual basis of the plea. Id. at 22.

After the Government presented the factual basis of the plea, the Court asked petitioner if the government's witness' testimony accurately described his involvement in what occurred, and petitioner said yes. Id. at 22 – 23. The Court then reviewed all the rights petitioner was giving up by pleading guilty. Id. at 22 and 29 - 32. Petitioner advised the Court that he was guilty of Count 4 of the indictment. Id. at 34. The petitioner further stated under oath that no one had

attempted to force him to plead guilty, and that he was pleading guilty of his own free will. Id. at 32 - 33. In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. Id. at 17 – 18 and 33. The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. Id. at 7 - 8. Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty. Id. at 32.

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that there was a factual basis for the plea, and that the petitioner understood the nature of the charge and the consequences of pleading guilty. Id. at 34. The petitioner did not object to the Court's finding.

On December 15, 2014, the PreSentence Investigation Report ("PSR") was filed. ECF No. 60. Paragraph 52 of the PSR provides as follows: Chapter Four Enhancement: None." Id. at 10.

On December 15, 2014, the petitioner appeared before the Court for sentencing. ECF No. 83. After considering several factors, including the circumstances of petitioner's childhood and the crime; petitioner's early and extensive criminal history; the likelihood of recidivism; and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 63 months imprisonment,[3] with credit for time served since August 15, 2014, to be followed by a term of three years supervised release. Id. at 17. The Court recommended that petitioner participate in the Bureau of Prison's ("BOP") substance abuse treatment program and any other available educational or vocational opportunities. Id. at 17 - 18. The Court noted that petitioner's appellate waiver appeared to be enforceable, but if he believed it was unenforceable, that his plea was somehow unlawful or involuntary, or that there was some other defect in the proceedings, he was

---

[3] The applicable Guideline range was 57 to 71 months. ECF No. 83 at 8; see also PSR, ECF No. 60, ¶160 at 41.

free to file a notice of appeal. The Court then advised petitioner about how to go about filing a notice of appeal *in forma pauperis*. Id. at 22 – 23.

**B. Direct Appeal**

Petitioner did not file a direct appeal.

**C. Federal Habeas Corpus**

**Petitioner's Contentions**

In his federal habeas petition and its memorandum in support, the Petitioner raises four grounds:

1) the AUSA committed fraud by including a waiver of petitioner's appellate rights in the plea agreement and by not explaining that such a waiver created a conflict of interest between defense counsel and petitioner [ECF No. 88 at 5];

2) defense counsel was ineffective for permitting petitioner to waive his appellate rights [Id. at 6];

3) counsel was ineffective at sentencing by withdrawing petitioner's objections to the PSR as "client-based," in which counsel did not concur. ECF No. 88-1 at 4.

4) counsel failed to object to the drug relevant conduct attributed to him by a government witness during a time petitioner was incarcerated in the Virginia Department of Corrections. Id.

Petitioner requests no specific relief beyond having his § 2255 motion granted. Id. at 5.

**Government's Motion to Dismiss or in the Alternative, for Summary Judgment**

The Government contends that Petitioner's motion to vacate should be dismissed or summary judgment granted in its favor, because petitioner's Ground One and Two claims fail because the inclusion of an appellate waiver in a federal plea agreement does not constitute fraud on the prosecutor's part or ineffectiveness on defense counsel's part. Further, petitioner's Ground Three claim fails because counsel was not ineffective in reaching a stipulation as to total drug relevant conduct.

**Petitioner's Amendment/Supplement to his § 2255 motion**

In his motion, construed here as a supplement to his motion to vacate, the petitioner raises two more grounds, contending that

     5) he is entitled to seek relief under <u>Johnson v. United States</u>, because he has "identified several of his prior convictions that . . . no longer qualify due to the residual clause [ECF No. 135];" and

     6) counsel was ineffective for failing to object to his criminal history computation, resulting in his receiving an "illegal sentence." <u>Id.</u>

As relief, he requests that he be resentenced within the 37 – 46 month Guideline range. <u>Id.</u>

## III. <u>Standard of Review</u>

### A. <u>Motion to Dismiss</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. <u>Mylan Labs, Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see</u> <u>also</u> <u>Martin</u>, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would

entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id.). (citations omitted), to one that is "plausible on its face," (Id. at 570), rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. <u>Miller v. Federal Deposit Ins. Corp</u>., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." <u>Id</u>. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." <u>Felty v. Graves-Humphreys Co</u>., 818 F.2d 1126, 1128 (4th Cir. 1987).

Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp</u>., 475 U.S. 574, 587-88 1986.

## IV. <u>Analysis</u>

### A. <u>Petitioner's Burden of Proof</u>

A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. §2255. A motion collaterally attacking a petitioner's sentence brought pursuant

to §2255 requires the petitioner to establish his grounds by a preponderance of the evidence." Sutton v. United States of America, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

**B. <u>Procedural Default</u>**

Before evaluating the merits of petitioner's claims, the Court must determine which of petitioner's issues he may bring in this § 2255 motion and which he has procedurally defaulted upon by failing to raise them on direct appeal. It is well settled that non-constitutional issues that could have been raised on direct appeal but were not may not be raised in a collateral attack such as a §2255 motion. <u>Sunal v. Large</u>, 332 U.S. 174, 178-79 (1947); <u>Bousley v. United States</u>, 523 U.S. 614 (1998). This is because "a final judgment commands respect" such that "a collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982). Examples of such "procedurally defaulted" issues include, generally, errors of law committed by the trial court and, specifically, "the existence of evidence to support any conviction, irregularities in the grand jury procedure, departure from a statutory grant of time in which to prepare for trial, and other errors in trial procedure which do not cross jurisdictional lines." <u>Sunal</u>, 332 U.S. at 179.

In contrast to non-constitutional issues, constitutional issues that were capable of being raised on direct appeal but were not may nevertheless be raised in a § 2255 motion so long as the petitioner demonstrates 1) "cause" that excuses his procedural default, and 2) "actual prejudice" resulting from the alleged errors. <u>United States v. Maybeck</u>, 23 F.3d 888, 891 (1994). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-493 (4th Cir. 1999), *cert. denied,* 529 U.S. 1010 (2000)

*overruled on other grounds by* <u>Dretke v. Haley</u>, 541 U.S. 386, 393 (2004).[4] Actual prejudice is then shown by demonstrating that the error worked to petitioner's "actual and substantial disadvantage," rather than just creating a possibility of prejudice. <u>See</u> <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." <u>Mikalajunas</u>,186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." <u>Id.</u> at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." <u>Schlup v. Delo</u>, 513 U.S. 298 (1995). Finally, issues previously rejected on direct appeal may not be raised in a collateral attack. <u>Boeckenhaupt v. United States</u>, 537 F.2d 1182 (4th Cir. 1976).

Petitioner's Ground One claim is effectively one of prosecutorial misconduct by the AUSA who allegedly committed fraud by including a waiver of petitioner's appellate rights in the plea agreement, and by failing to explain that such a waiver created a conflict of interest between defense counsel and petitioner.

Petitioner contends that on October 14, 2014, Attorney General Eric Holder issued a memorandum to United States Attorneys, directing them not to enforce collateral attack waivers in existing plea agreements, contending that "[t]his would now allow those who have been prevented from raising ineffective assistance of counsel claims in a 28 U.S.C. § 2255 to file their claims." ECF No. 88-1 at 2. Further, he cites to <u>Wood v. Milyard</u>, 132 S.Ct. 1826, 1833 n.5

---

[4] <u>Dretke</u> recognized a narrow exception to the procedural default "cause" requirement, where a constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense, and extended the exception to claims of capital sentencing error.

(2012) in asserting that "when the Government purposely avoids enforcing a waiver provision in a plea agreement, the Court abuses it[s] discretion if it raises the issue." Id.

In the present case, Petitioner failed to file a direct appeal. Therefore, Petitioner's claims, excluding his ineffective assistance of counsel claim, would normally be barred absent a showing of cause and prejudice or actual innocence. See United States v. Richardson, 195 F.3d 192, 198 (4th Cir. 1999) (stating that claims of ineffective assistance of counsel not raised on direct appeal and raised on collateral attack do not require a "cause and prejudice" showing because the claims are more appropriately raised on collateral attack than on direct appeal). As a preliminary matter, petitioner has not even alleged, let alone proven actual innocence. Even if he had, however, he could not now demonstrate actual innocence because he admitted during the plea hearing that he was guilty of the crime charged in Count Four of the Indictment. ECF No. 102 at 32. Consequently, Petitioner's claim is procedurally defaulted. Petitioner has not shown that any prosecutorial misconduct occurred at all, nor has he even attempted to show cause to excuse his failure to raise these issues on appeal. Finally, even if this claim were not already procedurally barred, the claim would be due to be dismissed as lacking merit, because Attorney General Eric Holder's memorandum had no impact on petitioner, given that petitioner's plea agreement contained no waiver of collateral attack rights. It is apparent from the instant action that petitioner's ability to bring his claims of ineffective assistance of counsel have not been impeded.

## C. Ineffective Assistance of Counsel

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires

that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." Strickland at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. Id. at 687. These two prongs are commonly referred to as the "performance" and "prejudice" prongs. Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992). In order to satisfy the prejudice requirement of Strickland's two-prong test, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985) (footnote omitted); Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. Strickland, 466 U.S. at 689-90. Moreover, there are no absolute rules in determining what is reasonable performance. See Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**Ground Two: Counsel's ineffectiveness prior to the plea, in permitting petitioner to waive his appellate rights**

Petitioner contends that counsel was ineffective for permitting petitioner to waive his appellate rights within his plea agreement, contending that it was an "ethical breach" for counsel to do so. ECF No. 88 at 6.

As a preliminary point, petitioner's claim implies that it is illegal or improper for a federal plea agreement to contain an appellate waiver. Petitioner's reliance on this premise is misplaced. For at least twenty-five years, the Fourth Circuit Court of Appeals has approved the knowing and voluntary waiver of a defendant's right to appeal. See United States v. Linder, 552 F.3d 391, 396-397 (4th Cir. 2008); United States v. Cohen, 459 F.3d 490, 493-495 (4th Cir. 2006); United States v. Johnson, 410 F.3d 137, 151-153 (4th Cir. 2005); United States v. Blick, 408 F.3d 162, 167-168 (4th Cir. 2005); United States v. General, 278 F.3d 389, 399-401 (4th Cir. 2002); United States v. Brown, 232 F.3d 399, 402 (4th Cir. 2000); United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992); United States v. Davis, 954 F.2d 182, 185-186 (4th Cir. 1992); and United States v. Wessells, 936 F.2d 165, 167 (4th Cir. 1991).

Counsel cannot be found to be ineffective for permitting petitioner to agree to a legal, proper, and appropriate waiver. Because petitioner has not proved deficient performance, he cannot prove prejudice. Petitioner has failed in his burden under Strickland and this claim should be dismissed.

**Ground Three: <u>Whether counsel was ineffective at sentencing, for withdrawing petitioner's objections to the PSR as "client-based" objections in which counsel did not concur</u>**

Petitioner contends that at sentencing, counsel was ineffective for having withdrawn his objections to the PSR as "client-based" objections in which counsel did not concur.[5] The government's response makes no mention of this claim. Petitioner did not file a reply.

---

[5] Despite Petitioner's claims of ineffective assistance of counsel, Petitioner fails to argue that, but for his counsel's alleged ineffectiveness, "he would not have pled guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

A review of the transcript of the sentencing hearing reveals that the "client-based" objections petitioner claims counsel wrongfully withdrew were all unsupported factual objections by petitioner that did not affect the guidelines calculations. See PSR, ECF No. 60 at 59 – 73. During the sentencing hearing, after petitioner was sworn in and advised about the penalty for perjury, this colloquy was had:

> THE COURT: . . . That having been said, feel free to ask questions. If you don't hear something, ask for it to be repeated. If you don't understand something, ask for an explanation. And at all times, feel free to consult with your attorney, Mr. Lambert.
>
> Mr. Lambert, have you received the presentence report and reviewed it with your client?
>
> MR. LAMBERT: I have, Your Honor. I have.
>
> THE COURT: And Mr. Baker, have you received that report and gone over it with your lawyer to your satisfaction?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: Mr. Douglas, has Government received and reviewed it?
>
> MR. DOUGLAS: Yes, Your Honor.
>
> THE COURT: I note there are a number of objections to the report, so let's go ahead and take those up. Mr. Lambert, in looking at these objections, up to Objection 11, it looks as though those are just basically factual disputes with regard to what's in the Government's version; is that correct?
>
> MR. LAMBERT: I'll make it easy for Your Honor.
>
> THE COURT: Okay.
>
> MR. LAMBERT: ***Mr. Baker - - we really withdrew those objections***, except for there is one objection that the Court, nor does the probation department, know about.
>
> THE COURT: Okay, so all of these objections that have been filed thus far, you are withdrawing?

MR. LAMBERT: Those were client-based, as I said in my sentence memorandum.

THE COURT: All right.

MR. LAMBERT: But there is one, and this is client based, if Your Honor will turn to page 12?

THE COURT: Of the report?

MR. LAMBERT: Yes.

THE COURT: Hold on.

MR. LAMBERT: I'm sorry, yes.

THE COURT: Okay, I'm with you.

MR. LAMBERT: [Paragraph] Number 66. It is Mr. Baker's position that the one point that was assigned to him by the probation department shouldn't be there simply because he believes that he did not do 30 days in jail, and he was not sentenced to probation on this particular charge. That's the only objection. It is client based. And I have nothing further to say with respect to objections.

THE COURT: Okay. It is client based, so I'm not going to read you the riot act, Mr. Lambert, for saying it at this late date, because it is late.

MR. LAMBERT: I just got it a few minutes ago, Judge.

THE COURT: However, I understand you feel compelled to raise it. Our Probation Officer on this one is Ms. Akers, I believe. Ms. Akers.

PROBATION OFFICER AKERS: Yes, Your Honor?

THE COURT: And I don't mean to put you on the spot. Was this just picked up on the III, or were there documents to support it?

PROBATION OFFICER AKERS: Your Honor, right now I'm looking through Mr. Baker's file. I believe I have a collateral investigation conducted by the Eastern District of Virginia that reported that information to us.

THE COURT: Mr. Douglas, response to the objection?

MR. DOUGLAS: Your Honor, I would note for the record that even without this point, he would still be at the same exact Criminal History Category of V, but I

have nothing obviously to add to knowing anything about his possession of marijuana in 1999.

PROBATION OFFICER AKERS: Your Honor, I would just have to confirm what Mr. Douglas put forth to the Court.

THE COURT: Okay, so whether or not this is accurate, he'd still be at a Criminal History Category of V. Moreover, the objection is late. I shouldn't consider it whatsoever. However, based upon the fact that this information came from a collateral investigation, I'm going to accept it as true at this late date. In any event, however, even if it is an error mine to do that, we're still in the same position with the calculation of the - - of the defendant's Criminal History Category, it would remain at V whether I took off that one point or not.

So the presentence report will not be amended and it will be accepted and ordered filed and made a part of the record herein.

ECF No. 83 at 3 – 6 (emphasis added).

It is apparent from this colloquy that petitioner was well aware that the client-based objections he had made were being withdrawn on his behalf, and that they were withdrawn with his full knowledge, awareness, and consent. Petitioner had already been sworn in, advised by the Court to feel free to ask questions or consult with counsel if he had questions or did not understand the proceedings. When counsel withdrew the unsupported objections, petitioner offered no protest and did not object or query counsel or the Court, as he had been instructed to do if he did not understand. Moreover, none of the objections, even the last-minute client-based objection made to the one point for the prior offense detailed on page 12, ¶66 of his PSR had any impact on petitioner's Criminal History Category of V. Accordingly, the undersigned finds that the petitioner has neither proven deficient representation nor demonstrated the requisite prejudice for his claim. See Strickland, 466 U.S. at 691. Consequently, the undersigned recommends that petitioner's claim of ineffective assistance of counsel as to this issue be denied.

**Ground Four: Whether counsel was ineffective for failing to object to drug relevant conduct attributed to him by a government witness during a time when petitioner was incarcerated in the Virginia Department of Corrections**

Petitioner contends that counsel was ineffective for failing to object to the amount of total drug relevant conduct attributed to him by a government witness during a time he was incarcerated in Virginia. The government contends that the use of historical information as relevant conduct is clearly contemplated by USSG §1B1.3; petitioner entered into the stipulation knowingly and willingly; and in negotiating the stipulation regarding relevant conduct, counsel ensured risking petitioner's exposure at sentencing to a judicial finding that the historical weight was more reliably at the high end of the estimates. Finally, the government correctly points out that petitioner does not even deny that the stipulation reflects his actual total drug relevant conduct. ECF No. 104 at 16. Petitioner did not reply.

Regarding petitioner's drug relevant conduct, paragraph 4 of the plea agreement contains this provision:

> 4. Pursuant to Sections 6B 1.4 and 1B1.3 of the Guidelines, the parties hereby stipulate and agree that the total drug relevant conduct of the defendant as determined by the Drug Quantity Table under U.S.S.G. § 2D 1.1 is a **Base Offense Level 24 (at least 80 grams but less than 100 grams of heroin).** The parties understand that pursuant to Section 6Bl.4(d), the Court is not bound by the above stipulation, and if not accepted by the Court, Mr. Baker will not have the right to withdraw his plea of guilty.

ECF No. 43, ¶4 at 3. The PSR notes that

> As noted, the parties have stipulated that the base offense level is 24 (for at least 80 grams but less than 100 grams of heroin.

> According to the Government's Version of the Offense, the stipulated drug relevant conduct is based on two controlled purchases on December 5, 2013, for a total of 0.469 gram of heroin (Counts Three and Four) and a controlled purchase of 0.55 gram of heroin on January 29, 2014 (Count Five), and historical information provided by witnesses.

> The probation office is not in a position to determine the credibility of the witness. Therefore, in order to provide the defendant with the benefit of his plea agreement, the probation office will utilize the stipulated amount of drug relevant

conduct (at least 80 grams but less than 100 grams of heroin) to calculate the total offense level.

PSR, ECF No. 60, ¶¶ 35 – 37 at 9.

At the plea hearing, the Court had this colloquy with petitioner regarding total drug relevant conduct:

> THE COURT: Do you understand that under a concept known as relevant conduct, the Court may take into account any conduct, circumstance, and injuries relevant to the crimes to which you are pleading?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that under the terms of the plea agreement, you and the Government have stipulated and agreed that your total drug relevant conduct is a Base Offense Level 24, which is at least 80 grams, but less than 100 grams of heroin?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Do you understand that the Court is not bound by this stipulation, and if the Court does not accept this stipulation, you do not have the right to withdraw your guilty plea?
>
> THE DEFENDANT?  Yes, sir.

ECF No. 102 at 17.

As noted *supra,* the government then presented its witness, Sergeant Tom Kearns, of the West Virginia State Police, then assigned to the Eastern Panhandle Drug and Violent Crime Task Force to provide a factual basis for the plea.  Sgt. Kearn's testimony was as follows:

[Direct Exam by Mr. Douglas]

> Q: Please state your name and occupation.
>
> A. Sergeant Kearns, West Virginia State Police, currently assigned to the Eastern Panhandle Drug and Violent Crimes Task Force.
>
> Q. Were you so assigned in December of 2013?
>
> A. I was.

Q. At that time was the Task Force able to develop a confidential informant who could purchase heroin from Irvin Baker, this defendant?

A: Yes, sir.

Q. Was there a controlled transaction from this defendant for heroin on December 5, 2013?

A. There was.

Q. How was that transaction arranged?

A. Task Force officers met with an informant who placed a controlled call to Irvin Baker, also known as Fats, and arranged to purchase $100 worth of heroin.

Q. Where was the transaction arranged to take place?

A. Foxcroft Avenue at the Chick-fil-A [sic] Restaurant.

Q. Is that within the Northern District of West Virginia?

A. It is.

Q. And how did the transaction eventually take place there?

A. The informant was dropped off at the restaurant. The defendant arrived in a vehicle. The defendant then stopped in the parking lot of the restaurant, the informant got in the vehicle and exchanged a $100 for a quantity of heroin.

Q. Did that exchange take place at approximately 8:48 p.m.?

A. It did.

Q. Did the purchased evidence become analyzed following that transaction?

A. It was.

Q. Was it analyzed to be a quantity of heroin?

A. Yes, it was.

MR. DOUGLAS: Thank you.

THE COURT: Mr. Lambert, do you have any questions for this witness, sir?

MR. LAMBERT: I have no questions for this witness, Your Honor.

THE COURT: *Mr. Baker, do you have any questions for this witness?*

THE DEFENDANT: *No, sir.*

MR. DOUGLAS: Your Honor may this witness be excused?

THE COURT: Yes. *Mr. Baker, is the evidence that the Government's witness just presented substantially correct, sir?*

THE DEFENDANT: *Yes, sir*.

THE COURT: *Did the testimony of the Government's witness accurately reflect your involvement in what occurred?*

THE DEFENDANT: *Yes, sir.*

THE COURT: Did these acts occur on or about December 5, 2013, at or near Berkeley County in the Northern District of West Virginia?

THE DEFENDANT: Yes, sir.

ECF No. 102 at 20 - 22.

It is apparent that petitioner had no objection to the information provided by the confidential informant that he stipulated to, to obtain the benefit of the plea agreement, for which he now contends counsel was ineffective for not challenging. Moreover, petitioner did not object to Sgt. Kearns' testimony at the Rule 11 hearing, regarding the information regarding the drug transaction, provided by the confidential informant that petitioner now insists occurred while he was incarcerated in Virginia, precluding his participation. Finally, petitioner's claim in this regard is insufficiently pled – nowhere does he explain what dates this improperly-attributed drug relevant conduct was committed, or the corresponding dates he alleges he was incarcerated when the conduct occurred, presumably preventing him from having been a participant.

Habeas petitions must meet heightened pleading requirements. McFarland v. Scott, 512 U.S. 849, 856 (1994). "In order to obtain an evidentiary hearing on an ineffective assistance

claim -- or, for that matter, on any claim -- a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing." Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992), *cert. denied,* 507 U.S. 923 (1993), *abrogation on other grounds recognized,* Yeatts v. Angelone, 166 F.2d 255 (4th Cir. 1999).

Petitioner's claims are not only insufficiently pled, they have no support in the record. Moreover, petitioner has not proved that counsel was ineffective, and cannot do so, given his own stipulation in the plea agreement, signed and dated on every page; his sworn testimony at the Rule 11 plea hearing, attesting to his agreement that the facts Sgt. Kearns testified to regarding the confidential informant were accurate; and his own failure to file a "client-based" objection to this allegedly disputed total relevant conduct determination. Counsel cannot be found deficient for not filing an objection to a stipulation his client agreed to, to gain the benefit of the plea agreement. This claim should be dismissed.

**Ground Five: <u>Whether petitioner is entitled to relief under Johnson because some of his prior convictions no longer qualify due to the residual clause</u>**

Without contending that he was sentenced as either a career offender or under the Armed Career Criminal Act, petitioner contends that he is seeking relief under Johnson v. United States. He asserts that he has identified several of his prior convictions that he believes "no longer qualify due to the residual clause[.]" ECF No. 135.

In Johnson, the Supreme Court struck the residual clause of the Armed Career Criminal Act ("ACCA") for being unconstitutionally vague in violation of the Due Process Clause of the Fifth Amendment. Johnson, 135 S.Ct. at 2555-57. The now-invalidated ACCA residual clause made any crime punishable by more than one year in prison and that "otherwise involve[d] conduct that present[ed] a serious potential risk of physical injury to another" a violent felony. 18

U.S.C. § 924(e)(2)(B)(ii).  Moreover, the Court acknowledges that some defendants sentenced as career offenders under the residual clause of §4B1.2 may also be entitled to relief if the holding in Johnson is extended to career offenders.[6]

However, no Johnson analysis is required for this case.  Petitioner was sentenced on December 15, 2014. He did not receive any Chapter Four enhancement as a career offender or an Armed Career Criminal.  He received only a 63-month sentence (5.25 years).  Accordingly, because he received no Chapter 4 enhancements, the residual clause of the Armed Career Criminal Act has no bearing on his case. This claim has no merit and should be dismissed.

**Ground Six: <u>Whether counsel was ineffective at sentencing for failing to object to petitioner's criminal history computation, resulting in petitioner receiving an illegal sentence</u>**

Petitioner contends that counsel was ineffective for failing to object to object to his criminal history computation, because his PSR incorrectly provided a total criminal history category of VI, based on 13 points of adjusted criminal points.  ECF No. 135. He avers that instead, his actual criminal history should be Category III, with an offense level of 19, which would have given him a sentencing guideline recommendation of 37 – 47 months, instead of the "illegal" 63-month sentence he received.  Id.

As an initial point, petitioner's total criminal history category was V, not VI.  See PSR, ECF No 60, ¶91 at 29. Moreover, this claim, likewise, is merely an insufficiently pled conclusory allegation. Nickerson v. Lee, 971 F.2d at 1136. Petitioner offers no explanation for why he believes his criminal history should be Category III; or why he thinks his offense level

_____

[6] The Fourth Circuit recently issued a decision which addressed the term "crime of violence" in §4B1.2. See In re Hubbard, ___ F.3d ___, 2016 WL 3181417 (4th Cir. June 8, 2016). Although the Court did not find that the career offender residual clause unconstitutional per se, it did grant the petitioner leave to file a successive § 2255 motion. Moreover, the United States Supreme Court recently granted a writ of *certiorari* in Travis v. Beckles, ___ S.Ct. ___, 2016 WL 1029080 (June 27, 2016). Among the issues presented in the case is whether Johnson applies retroactively to collateral cases challenging federal sentences under the residual clause in USSG § 4B1.2(a)(2) (defining "crime of violence").

should have been 19, giving him a sentencing guideline recommendation of 37 – 47 months. Because the undersigned finds that there was no prejudice, the undersigned "need not consider the performance prong." <u>Fields</u>, 956 F.2d at 1297. Because petitioner has not met his burden under <u>Strickland</u>, he is not entitled to the relief he seeks and this claim, too, should be dismissed.

## IV. <u>Recommendation</u>

For the reasons stated above, the undersigned recommends that the respondent's Motion to Dismiss or in the Alternative, for Summary Judgment [ECF No.103] be **GRANTED** and petitioner's §2255 motion [ECF No. 84] be **DENIED** and **DISMISSED with prejudice** from the docket.

Further, the undersigned recommends that the petitioner's pending letter motion to amend/correct his pending §2255 motion [ECF No. 135] be construed as a motion to supplement and **GRANTED.**

Within **fourteen (14) days** after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the report and recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the United States District Judge. **Failure to timely file objections to this report and recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation**. 28 U.S.C. §636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985): <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S.1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address on the docket sheet, and electronically to all counsel of record, as applicable.

DATED: July 12, 2016

James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE